JS·6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4387 | **DATE** | 3/12/2001 |
| **CASE TITLE** | Raul Berrios vs. William A. Halter | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Having carefully reviewed the entire record upon which the ALJ based his decision, the Court concludes that the ALJ's finding, that Plaintiff was not disabled as of or prior to the date of the decision, is supported by substantial evidence. The Commissioner's Motion for Summary Judgment (11-1) is granted. Plaintiff's Motion for Summary Judgment (6-1) is denied. AK

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | **MAR 1 3 2001** | |
| | Notified counsel by telephone. | | date docketed | 13 |
| | Docketing to mail notices. | | *mw* | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/12/2001 | |
| | | courtroom deputy's initials | date mailed notice | |
| | VKD | | VKD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RAUL BERRIOS, | ) | Case No. 00 C 4387 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge |
| | ) | Arlander Keys |
| | ) | |
| | ) | |
| WILLIAM A. HALTER[1], Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Raul Berrios, pursuant to 42 U.S.C. §
405(g)(West 2000), moves this Court for summary judgment
pursuant to Rule 56(a) of the Federal Rules of Civil Procedure
reversing the decision of the Commissioner of Social Security
("Commissioner"), which denied his application for Social
Security Disability Insurance (SSD) benefits and Supplemental
Security Income (SSI) benefits under the Social Security Act.

---

[1]On January 20, 2001, William A. Halter became Acting
Commissioner of Social Security. In accordance with Fed. R.
Civ. P. 25 (d)(1) and the last sentence of 42 U.S.C. §
405(g), William A. Halter is automatically substituted for
Kenneth S. Apfel as the Defendant in this civil action, and
no further action is necessary to continue this case.

The Commissioner has filed a Cross-Motion for Summary Judgment in his favor. For the reasons set forth below, the Court grants the Commissioner's Motion and denies the Plaintiff's Motion.

## Procedural History

On February 18, 1997, Plaintiff applied for SSD and SSI benefits, alleging that he had been disabled since November 15, 1996 due to bronchial asthma and high blood pressure. (R. at 48-50, 207-210.) Plaintiff's applications for SSD and SSI benefits were denied on May 14, 1997 and May 20, 1997, respectively. (R. at 211, 212-215.)[2] On June 20, 1997, Plaintiff filed a request for reconsideration. (R. at 27.) Upon reconsideration, the applications were, again, denied on August 28, 1997 and September 5, 1997, respectively. (R. at 216, 217-221.)

On November 3, 1997, Plaintiff filed a Request for Hearing by an Administrative Law Judge ("ALJ") (R. at 33), and, on October 5, 1998, a hearing was held before ALJ Irving Stillerman, at which Plaintiff – who was represented by counsel – testified. (R. at 225-264.) On November 11, 1998,

[2] References are to the certified administrative record prepared by the Commissioner and filed with this Court pursuant to 42 U.S.C. § 405(g).

the ALJ issued his decision, finding that Plaintiff was not disabled. (R. at 11-20.) On January 11, 1999, Plaintiff filed a Request for Review of the ALJ's decision with the Commissioner's Appeals Council. (R. at 9-10.) On May 19, 2000, the Appeals Council denied Plaintiff's request, concluding that there was no basis for review. This denial stands as the final decision of the Commissioner, and is the subject of the Motions now before the Court. (R. at 6-7.)

## Factual Background

### A. Plaintiff's Testimony

At the October 5, 1998 hearing before ALJ Stillerman, Plaintiff testified that he was 47 years old, (R. at 232), and had completed two years of high school. (R. at 236). He had past relevant work experience as a packer for six years, which required him to occasionally lift up to fifty pounds, and frequently lift or carry up to twenty-five pounds. (R. at 99, 239-240.) Plaintiff stopped the packing work in late 1995 due to back problems. (R. at 240.)

Plaintiff testified that his treating physician, Dr. Fornaris, referred him to physical therapy due to his back pain. (R. at 249, 260.) According to Plaintiff, the physical therapy initially alleviated the back pain, but the

pain, nonetheless, eventually recurred. (R. at 260.)

Plaintiff testified that he currently uses a cane, per the recommendation of Dr. Fornaris, for pain in his lower back and down his right leg, which develops while walking. (R. at 254, 244.) According to Plaintiff, this pain also develops if he sits too long, greater than 40 minutes, or stands too long, greater than 20 to 25 minutes. (R. at 246.) Plaintiff also testified that, in order to relieve the pain, he performs physical therapy exercises at home, takes hot showers, applies hot and cold compresses to his back, and lies down about twice a day. (R. at 247-248.) He testified that he is only able to lift 15 pounds comfortably before pain in his back develops. He also has trouble bending, so he often uses an extender to complete tasks. (R. at 253-254.) Plaintiff further testified that he currently experiences few problems with leg swelling, and no longer takes water pills. (R. at 254-255.) His asthma and blood pressure are presently under control with medication. (R. at 256.)

In describing his daily activities, Plaintiff testified that he helps with the cooking, dishes, and shopping, and that he can walk about a block and a half. (R. at 257.) However, once pain in his back and leg develops, he explained that he

must stop engaging in these activities.  (R. at 258.)

B.  **Medical Evidence**

Plaintiff's medical records show that, from February 3, 1997 through February 8, 1997, Plaintiff was hospitalized and treated for an acute exacerbation of bronchial asthma and for rectal bleeding due to internal hemorrhoids.  (R. at 112-121.)

On February 22, 1997 Plaintiff saw Dr. Fornaris and complained of back pain.  A dorsal spine x-ray demonstrated "significant degenerative osteoarthritic changes" and a lumbosacral spine x-ray demonstrated "minimal degenerative osteoarthritic changes".  (R. at 122-123.)

On April 11, 1997, Plaintiff had a consultative examination with Glynis Vashi, M.D.  (R. at 124-127.) Plaintiff's chief complaints were that of "asthma and high blood pressure."  Plaintiff was currently on medication to control his blood pressure and used an inhaler to control his asthma.  (R. at 124.)  Plaintiff denied any leg swelling. (R. at 125.)  There were no abnormalities of either lower extremity and no limitation of motion of any joint.  A straight leg raising test was normal.  There was no anatomical abnormality of the cervical, thoracic or lumbar spine, and no

limitation of motion of any spinal segment. (R. at 126.) Dr. Vashi diagnosed Plaintiff with a history of hypertension, a history of bronchial asthma, and obesity. (R. at 127.)

On April 28, 1997, a state agency physician, Julius Villaflor, M.D., reviewed the existing medical evidence of record. (R. at 133.) Dr. Villaflor concluded that Plaintiff could occasionally lift fifty pounds; frequently lift twenty-five pounds; stand and/or walk about six hours in an eight-hour work day; and sit with normal breaks for a total of six hours in an eight-hour work day. He also concluded that Plaintiff was unlimited in ability to push and/or pull. (R. at 134.)

On May 6, 1997, Dr. Fornaris submitted Respiratory and Cardiac Reports. (R. at 141-148.) The Reports were based on Plaintiff's exam date of April 3, 1997. The Respiratory Report showed a diagnosis of bronchial asthma with wheezing, for which Plaintiff used medication. Dr. Fornaris recommended that Plaintiff minimize work-related activities requiring great physical effort due to the bronchial asthma. (R. at 142-143.) The Cardiac Report showed that Plaintiff had hypertension (R. at 144), for which he took medication. (R. at 147). Dr. Fornaris reported that Plaintiff could usually

perform daily activities, except when experiencing respiratory difficulties. (R. at 146.)

Dr. Fornaris also submitted a second set of Reports, on November 26, 1997, based on an exam date of August 7, 1997. (R. at 149-156.) The Cardiac Report, again, addressed the hypertension and the prescribed medication. (R. at 153.) The Respiratory Report diagnosis showed bronchial asthma with wheezing, for which the Plaintiff was taking medication. (R. at 154-155.) Both reports indicated that Plaintiff experienced low back pain, but no treatment was indicated relative to this condition. (R. at 153, 155.)

Dr. Fornaris' medical records show that, on December 8, 1997, Plaintiff complained of low back pain. A CT-scan of Plaintiff's low back suggested a mild protrusion of the disc extending to the right lateral recess at level L4-5, and osteoarthritic changes of the facet joints at L4-5 and L5-S1. (R. at 184.) From December 18, 1997 through January 13, 1998, Plaintiff underwent seven physical therapy sessions for his back. (R. at 158-165.) After completion of the physical therapy, Plaintiff had no low back pain or paresthesias (abnormal sensation) in his legs, and the back pain had disappeared. (R. at 163.)

However, Plaintiff saw Dr. Fornaris on February 6, 1998, complaining of low back pain, and on February 28, 1998, complaining of swelling in the legs. (R. at 170-171.) A medical assessment report completed by Dr. Fornaris, on March 3, 1998, indicated that Plaintiff had low back pain, hypertension, and bronchial asthma. The assessment also noted that Plaintiff was obese. (R. at 167.) The objective medical evidence cited by Dr. Fornaris consisted of a CT scan of Plaintiff's lumbar spine, which demonstrated mild protrusion of Plaintiff's disc at L4-L5 and osteoarthritis at L4-L5-S1. (R. at 167.) Dr. Fornaris opined that Plaintiff could only stand for one to two hours out of an eight-hour workday; could only sit for two to three hours out of an eight-hour workday; and could only lift twenty pounds occasionally and ten pounds frequently. (R. at 168.)

On March 16, 1998, Plaintiff saw Dr. Fornaris for leg pain and swelling. (R. at 171.) A venous doppler study of Plaintiff's legs showed good blood flow and good respiratory motion, and there was no evidence of deep venous thrombosis. (R. at 185.) Dr. Fornaris' progress notes show that Plaintiff continued to complain of low back pain and leg swelling in May, June, and December 1998. (R. at 172-173.)

C.  **The ALJ's Decision**

In his November 11, 1998 decision, the ALJ considered the following medically determinable impairments of Plaintiff: hypertension, bronchial asthma, obesity, and low back pain. (R. at 19.)  The ALJ held that Plaintiff is not disabled, as defined in the Social Security Act, because his impairments did not meet the requirements, or equal the level of severity contemplated, for any impairment listed in Appendix 1 to Subpart P of Part 4.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (West 2001); (R. at 16.)  Stating further, the ALJ concluded that Plaintiff's impairments merely precluded him from lifting more than fifty pounds occasionally, or twenty-five pounds frequently, and therefore, Plaintiff could perform his past relevant work as a packer.  (R. at 17.)

More specifically, the ALJ concluded that the objective medical evidence did not support the alleged severity of Plaintiff's symptoms, or the existence of disabling symptoms and limitations greater than the lifting restrictions described above.  (R. at 17.)  The ALJ acknowledged the results of the CT scan, but noted that, per Exhibits 2F, 3F, and 9F, there was no evidence of spasm, atrophy, or anatomical deformity, and that Plaintiff manifested only mild difficulty

with heel and toe walking, squatting and arising, and hopping on one leg. (*Id.*) Also, according to the ALJ, Plaintiff's back pain and lower extremity paresthesia had been eliminated through physical therapy. (*Id.*) Furthermore, the ALJ noted that, although Plaintiff is hypertensive and has bronchial asthma, both conditions were (and are) controlled with medication. (*Id.*)

Finally, the ALJ concluded that Plaintiff's allegations of disabling symptoms and limitations were not credible. (R. at 18.) First, Plaintiff described daily activities of cooking, washing dishes, shopping, and performing physical therapy exercises for his back pain, which the ALJ found inconsistent with Plaintiff's claims of disabling symptoms and limitations. (*Id.*) Second, the ALJ found that Plaintiff's treatment for all his impairments had been, essentially, routine and conservative in nature. (*Id.*) Third, physicians employed by the State Disability Determination Services did not find Plaintiff to be "disabled." (*Id.*) Fourth, although the treating physician, Dr. Fornaris, had a far more conservative assessment of Plaintiff's functional capabilities, Dr. Fornaris' progress notes and reports did not indicate abnormalities that one would expect if Plaintiff

were, in fact, disabled. (*Id.*) Furthermore, according to the ALJ, Dr. Fornaris' opinion was without substantial support from the other evidence of record. (R. at 19.)

Based on the above conclusions, the ALJ held that Plaintiff is capable of performing his "past relevant work" as a packer, which required occasional lifting of up to fifty pounds and frequent lifting of up to twenty-five pounds. (R. at 19.) Therefore, the ALJ found that Plaintiff is not under a "disability" as defined in the Social Security Act, and is not entitled to SSD or SSI benefits. (R. at 20.)

## Standard of Review

In reviewing the Commissioner's (here the ALJ's) decision, the court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Rather, the court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron* 19 F.3d at 333 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ must consider all relevant evidence and may not select and discuss only that

-11-

evidence that favors his ultimate conclusion. *Id.* Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or ALJ), not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). The court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Erhart v. Secretary of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992).

This does not mean that the Commissioner (or ALJ) is entitled to unlimited judicial deference, however. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level, and state his reasons for accepting or rejecting "entire lines of evidence," although he need not evaluate in writing every piece of evidence in the record. *See Herron*, 19 F.3d at 333; *see also Young v. Sec. of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within reasonable limits" if there is to be

meaningful appellate review); *Guercio v. Shalala*, No. 93 C 323, 1994 WL 66102, at *9 (N.D. Ill. Mar. 3, 1994) (ALJ need not spell out every step in his reasoning, provided he has given sufficient direction that the full course of his decision may be discerned), (citing *Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir. 1988)).

The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (West 2001). The ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *Id.; see also Young*, 957 F.2d 386, 389. A finding of disability requires an affirmative answer at either step 3 or step 5. A negative answer at any step (other than step 3) precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4, after which the burden

shifts to the Commissioner at step 5. *Id.*

## Analysis

In the case at bar, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 15, 1996 (Step 1), that Plaintiff's impairments were severe (Step 2), but that they did not meet or equal any of the impairments listed in the regulations as being so severe as to preclude substantial gainful activity (Step 3). Moving to Step 4, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work-related activities, except for work involving the lifting of more than fifty pounds occasionally and twenty-five pounds frequently. Finding that this functional capacity was not incompatible with Plaintiff's past work as a packer, the ALJ found that Plaintiff retained the ability to perform past relevant work and, therefore, was not disabled.[3] After carefully reviewing the entire record, the Court finds that the ALJ's decision is supported by substantial evidence on the record as a whole.

Plaintiff makes four principal arguments in his

---

[3] Because the ALJ found that Plaintiff could still perform his past relevant work, it was unnecessary to proceed to Step 5, where the burden would have shifted to the Commissioner to prove that there were other jobs that Plaintiff could perform.

Memorandum of Law in Support of Summary Judgment ("Pl.'s Memo."): (1) that the ALJ's decision was not supported by substantial evidence; (2) that the ALJ failed to accord sufficient weight to the report of the treating physician; (3) that the ALJ's credibility determination was erroneous as a matter of law; and (4) that the ALJ failed to consider the combined effect of Plaintiff's impairments.

With regard to Plaintiff's first argument, Plaintiff asserts that the ALJ only addressed selective aspects of the medical evidence, and failed to build a logical bridge from the evidence to his conclusion. The Court, however, does not find this argument persuasive. The Court's review of the record shows that the ALJ did, indeed, consider all the medical evidence in the record. Specifically, the ALJ considered Plaintiff's severe impairments of bronchial asthma, hypertension, obesity, and low back/leg pain. (R. at 19.) The ALJ explained that there was substantial evidence in the medical records to show that the asthma and hypertension were currently under control with medication, and the Court finds no reason to disturb this finding.

With regard to the low back/leg pain, the ALJ specifically referred to Exhibits 2F, 3F, and 9F in

determining that the medical evidence failed to provide strong support for Plaintiff's allegations of disabling symptoms and limitations. Although Plaintiff contends that these Exhibits do not provide substantial evidence for the ALJ's conclusion, the Court disagrees. Exhibit 2F consists of X-ray results, from February 22, 1997, that show significant degenerative osteoarthritic changes in the dorsal spine, and minimal degenerative osteoarthritic changes in the lumbosacral spine. Exhibit 3F consists of results of a consultative exam completed by Dr. Glynis Vashi on April 11, 1997. The results of this exam show no abnormality of either lower extremity; no limitation of motion of any joint; no paraspinal muscle spasm or muscle atrophy; no anatomical abnormality of the cervical, thoracic, or lumbar spine; no limitation of motion of any spinal segment; and only mild difficulty with heel and toe walking, squatting and arising, and hopping on one leg. Thus, although the February 1997 X-ray results show degenerative osteoarthritic changes in the spine (Exhibit 2F), the April 1997 consultative exam (Exhibit 3F) shows that these conditions had only minimal effect on Plaintiff's physical abilities.

Plaintiff further claims that Exhibit 9F, which consists

of the records of the treating physician, Dr. Fornaris, "do not describe any exam findings whatsoever to support or detract from the ALJ's conclusion." (Pl.'s Memo. at 7.) However, this point, as Defendant argues, supports the ALJ's decision, as Dr. Fornaris' records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if Plaintiff were, in fact, disabled. Thus, Exhibits 2F, 3F, and 9F are substantial evidence that support the ALJ's conclusion.[4]

In addition, although Plaintiff complained of low back/leg pain in December 1997, the ALJ – to support his conclusion that Plaintiff was not disabled – noted the success of physical therapy. Upon discharge from physical therapy in

---

[4] Plaintiff claims that the ALJ made a biased comment during the hearing (i.e. that it is common for people to have arthritis at 50 years of age) which demonstrated a skepticism that tainted his evaluation of Plaintiff's claim. (Pl.'s Memo. at 8.) However, as pointed out by Defendant, to rise to the level of bias, remarks during a proceeding must "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Furthermore, mild judicial intemperateness does not suspend the operation of the substantial evidence rule. *Pearce v. Sullivan*, 871 F.2d 61, 64 (7th Cir. 1989). In the case at hand, the ALJ's isolated comment does not rise to the necessary level for the Court to find that the ALJ was biased, especially considering the ALJ thoroughly considered all the evidence in the record.

January 1998, Plaintiff's lumbar disc had stabilized and there was no evidence of any root impingement. In fact, according to Exhibit 8F, Plaintiff's back pain and lower extremity paresthesia had been eliminated. (R. at 17.)

Plaintiff argues that the success of the physical therapy does not constitute substantial evidence to support the ALJ's conclusion, because later entries by his treating physician Dr. Fornaris reveal that the low back/leg pain resumed and continued to be a problem. Dr. Fornaris' treatment notes show that Plaintiff complained of low back/leg pain in February, March, May, June, and December 1998. However, as explained *supra*, the ALJ explained that Dr. Fornaris' treatment notes do not document the type of significant clinical and laboratory abnormalities one would expect if Plaintiff were disabled. For example, although Dr. Fornaris' notes indicate numbness in the right leg on two occasions prior to the physical therapy, subsequent treatment notes do not reflect this abnormality or indicate more extensive treatments.

Plaintiff asserts in his second argument that the ALJ failed to accord sufficient weight to the report of the treating physician, Dr. Fornaris. Dr. Fornaris opined that

Plaintiff could only sit for two to three hours, and only stand for one to two hours during the workday. (R. at 168.) However, the ALJ reasonably rejected the severity of these limitations established by Dr. Fornaris, because the clinical and laboratory findings did not support these limitations. (R. at 17-18.) The Court notes that, while the opinions of treating physicians are entitled to "controlling weight" when based on "medically acceptable clinical and laboratory diagnostic techniques," no such deference is warranted where such opinions are inconsistent with the other evidence in the record, and contrary to the medical records considered as a whole. 20 C.F.R. § 404.1527(d)(2) (West 2001). In such instances, the ALJ has the authority to assess the medical evidence and give greater weight to that which is more credible. *See id; see also Butera v. Apfel*, 173 F.3d 1049, 1056 (7th Cir. 1999) (rejecting treating physician's low assessment of plaintiff's capabilities based on the evidence as a whole).

Here, the ALJ noted that Dr. Fornaris' treatment notes fail to provide clinical and laboratory findings to support his severe restrictions of Plaintiff's functional capabilities. Indeed, when asked what objective medical

evidence supported his opinion, Dr. Fornaris, characterizing the impairments in rather minimal terms, cited "mild" protrusion of the disc and a scan demonstrating osteoarthritis.[5]   Such findings alone, however, do not demonstrate a disabling condition. *See, e.g., Butera, supra,* 173 F.3d at 1055-1057 (finding Plaintiff not disabled despite back and leg pain from herniated disc).

Also, as discussed *supra*, although Plaintiff complained of low back/leg pain after physical therapy, Dr. Fornaris' subsequent treatment notes do not reflect significant clinical or laboratory abnormalities, or suggest more invasive interventions, such as surgery or steroid injections.   In fact, Plaintiff even admits that Dr. Fornaris' treatment notes do not describe any exam findings to support or detract from

_____

[5] The ALJ further noted that Dr. Fornaris did not increase the restrictions until Plaintiff's claim had been denied twice.   In addition, even after increasing the restrictions, Dr. Fornaris continued to characterize Plaintiff's impairments in minimal terms, such as "mild" protrusion of the disc.   Plaintiff argues that the increased restrictions were warranted due to deterioration of his condition.   However, in Exhibit 9F – the March 3, 1998 medical report where Dr. Fornaris stated Plaintiff's severe physical restrictions – Dr. Fornaris characterized Plaintiff's condition as "unchanged."   (R. at 167.)   Also, contrary to Plaintiff's assertion, Dr. Fornaris' treatment notes never characterize Plaintiff's degree of osteoarthritis as "severe."   (R. at 167, 184.)

the ALJ's conclusion. (*See* Pl.'s Memo. at 7.) Thus, the ALJ

reasonably rejected Dr. Fornaris' assessment of the severity

of Plaintiff's limitations, because his assessment was not

well supported by clinical and laboratory findings.[6]

Finally, contrary to Plaintiff's assertion in his Reply,

the ALJ did, in considering the weight to give to Dr.

Fornaris' conclusions, consider the length of treatment,

---

[6] Plaintiff further claims that the ALJ had a duty to re-contact Dr. Fornaris for clarification of evidence that would support Dr. Fornaris' assessment of Plaintiff's functional capabilities. However, an ALJ only has a duty to re-contact the treating physician when the physician's report is ambiguous, incomplete, or based on medically unacceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 404.1512(e)(1) (West 2001). In the case *sub judice*, the ALJ did not have a duty to re-contact Dr. Fornaris, because the ALJ did not find that Dr. Fornaris' report fell into any of the aforementioned categories. Rather, the ALJ found Dr. Fornaris' assessment of Plaintiff's physical restrictions unconvincing based on the evidence as a whole. For example, as explained *supra*, with regard to the low back/leg pain, Dr. Fornaris' treatment notes did not reveal the clinical and laboratory abnormalities that one would expect to find if Plaintiff were truly disabled. Furthermore, Plaintiff's daily activities (discussed in more detail *infra*), of which Plaintiff testified at the hearing, were not as limited as one would expect if Plaintiff were disabled. Additionally, the consultative exams completed by the DDS-employed physicians, Dr. Villaflor and Dr. Vashi (discussed in more detail *infra*), do not support a finding of disability. Consequently, there was no inadequacy in Dr. Fornaris' report that would have required a duty to re-contact the physician – rather, the ALJ found Dr. Fornaris' restrictions unpersuasive when considered with the evidence as a whole.

frequency of examination, and nature and extent of the treatment relationship between Plaintiff and the treating physician. *See* 20 C.F.R. § 404.1527(d)(2)(i) and (ii). These factors were, in fact, discussed at the hearing. (R. at 249-251.) Nonetheless, consideration of these factors, in this case, only bolsters the ALJ's conclusion to reject the treating physician's severe functional limitations. In fact, the Seventh Circuit has stressed that "a claimant's treating physician may be biased in favor of the claimant; bias that a consulting physician may not share." *Micus v. Brown*, 979 F.2d 602, 607 (7th Cir. 1992); *see also Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.")(citation omitted).

In the case *sub judice*, as explained *supra*, Dr. Fornaris' conclusions were not supported by the medical records as a whole. Specifically, they were inconsistent with the testimony concerning Plaintiff's daily activities (discussed *infra*), inconsistent with the lack of clinical and laboratory abnormalities one would expect to find in Dr. Fornaris' treatment notes, and inconsistent with the DDS-employed

-22-

physicians' consultative exam results. Significantly, nothing in the regulatory scheme "mandates that the opinion of a treating physician always be accepted over that of a consulting physician, only that the relative merits of both be duly considered." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). The only requirement is that the ALJ's decision be supported by substantial evidence. *Id.* Consequently, the ALJ was not required to give Dr. Fornaris' conclusions controlling weight.

Plaintiff asserts, in his third principal argument, that the ALJ's credibility determination is erroneous and violates Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A.) SSR 96-7p provides that, when Plaintiff's complaints of disabling symptoms and limitations are not substantiated by objective medical evidence, the ALJ must make a credibility finding based on a consideration of the entire case record. Pursuant to 20 C.F.R. § 404.1529(c)(3)(West 2001), the following factors may be considered in assessing credibility: Plaintiff's statements about his symptoms; Plaintiff's daily activities; evidence submitted by the treating and/or examining physicians; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and

aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken; treatment received other than medication; any other pain relief measures used; and other factors concerning Plaintiff's limitations and restrictions. Importantly, the ALJ's credibility determination is entitled to special deference because the ALJ is in the "best position to see and hear the witnesses and assess their forthrightness." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Accordingly, an ALJ's credibility determination will not be disturbed unless it is "patently wrong." *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).

Plaintiff erroneously contends that the ALJ unreasonably concluded that he may have been exaggerating his symptoms. However, the ALJ considered the entire record, which included factors such as Plaintiff's daily activities, Plaintiff's subjective complaints of disabling symptoms and limitations, the treating and examining physicians' exam results, and Plaintiff's routine and conservative treatment for all his alleged symptoms. (R. at 18.) The ALJ found, after considering these factors, that Plaintiff's credibility was undermined, and the Court does not find that the ALJ's decision was "patently wrong."

Specifically, Plaintiff alleges that the ALJ did not sufficiently consider the change in his daily activities due to his back pain. Plaintiff asserts that the ALJ used his ability to cook, wash dishes, walk one-and-a-half blocks to the store, and shop – admissions made at the hearing – to argue that Plaintiff is able to work full-time. However, the ALJ did not address Plaintiff's daily activities to show his ability to work full-time, but merely to show that Plaintiff's activities were not as limited as one would expect, given his alleged symptoms. (R. at 18.) In other words, Plaintiff's ability to cook, wash dishes, walk, and shop, undermined – or detracted from – his credibility. *See Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993)(upholding ALJ's credibility finding based, in part, on claimant's daily activities of light chores and reading, which were inconsistent with claimant's symptoms), *overruled on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999).

The ALJ also scrutinized Plaintiff's statements about his symptoms in assessing credibility. The ALJ noted, during the hearing, that Plaintiff was using a cane to walk. Plaintiff claims that Dr. Fornaris recommended the cane, and that the physical therapy notes indicate that he should use a walking

-25-

stick. However, Dr. Fornaris' treatment notes do not indicate that he recommended a cane, and the physical therapy discharge form indicates that the need for an ambulation or assistive device was unnecessary. It was appropriate for the ALJ to use his observations of Plaintiff at the hearing as a factor in assessing credibility. *See* SSR 96-7p, 1996 WL 374186 (S.S.A) (finding that where claimant attends an administrative proceeding, the ALJ may consider his recorded observations of claimant as part of overall evaluation of claimant's credibility).

Plaintiff also alleges that the ALJ ignored his repeated complaints of back pain, and his need for prescription pain medication. However, the ALJ considered these complaints, but, nonetheless, found that they undermined Plaintiff's credibility, because his daily activities - including cooking, washing dishes, walking to the store, and shopping - were not as limited as one might expect, considering his alleged symptoms and limitations. Thus, the ALJ fully considered Plaintiff's subjective complaints, but concluded that the progress notes and reports failed to reveal the type of clinical and laboratory abnormalities one would expect if Plaintiff were, in fact, disabled. (R. at 18.) Consequently,

the ALJ reasonably concluded that these inconsistencies detracted from Plaintiff's credibility.

The ALJ also considered the treating and examining physicians' exam results in assessing Plaintiff's credibility. An ALJ may consider the lack of medical evidence as probative of the claimant's credibility. *See, e.g.*, *Powers*, *supra*, 207 F.3d at 435-36 ("The discrepancy between the degree of pain attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition."). Objective clinical and laboratory findings are useful indicators of disability, and may assist the ALJ in making reasonable conclusions about the intensity and persistence of the claimant's symptoms, and the effect those symptoms may have on the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(2). In this case, as explained *supra*, Dr. Fornaris' treatment notes do not indicate the type of clinical or laboratory findings one would expect given Plaintiff's alleged symptoms and limitations. Furthermore, as explained *supra*, the DDS-employed physicians' medical reports were inconsistent with Dr. Fornaris' conclusions, and do not otherwise support Plaintiff's alleged symptoms and limitations. For instance, Dr. Vashi's exam results show no

abnormality of either lower extremity; no limitation of motion of any joint; no paraspinal muscle spasm or muscle atrophy; no anatomical abnormality of the cervical, thoracic, or lumbar spine and no limitation of motion of any spinal segment; and only mild difficulty with heel and toe walking, squatting and arising, and hopping on one leg. Considering the lack of medical evidence to support Plaintiff's claim of disabling symptoms and limitations, the ALJ's conclusion was reasonable. *See, e.g., Butera, supra*, 173 F.3d at 1055-1056 (upholding ALJ's rejection of Plaintiff's claim of disabling back and leg pain, despite imaging evidence of disc herniation, in part, because the ALJ noted that doctors found "no evidence of motor, sensory, or reflex loss" and claimant could "walk on his heels and toes").

Additionally, the ALJ considered, in his credibility assessment, the routine and conservative nature of Plaintiff's treatment. This factor further undermines Plaintiff's credibility, because, based on his alleged symptoms and limitations, one would expect to find more invasive interventions suggested, such as surgery or steroid injections. Consequently, based on all these factors, the ALJ's credibility determination is not erroneous or "patently

wrong," but is based on substantial evidence, which the ALJ adequately articulated in his opinion. Thus, the ALJ's credibility determination cannot be disturbed.

Plaintiff's final argument is that the ALJ failed to consider the combined effects of his impairments. Plaintiff claims that the ALJ ignored his obesity and the swelling in his legs. As an initial observation, the Court notes that the only impairments listed in Plaintiff's application for SSD and SSI benefits are bronchial asthma and high blood pressure. Nonetheless, the ALJ fully considered the combined effect of Plaintiff's impairments, including his obesity and low back/leg pain. In fact, the ALJ specifically listed Plaintiff's impairments as hypertension, bronchial asthma, obesity, and low back pain. (R. at 19.) The ALJ referred to these "impairments" in evaluating their level of severity, (R. at 16), and in discussing his RFC finding. (R. at 17). Furthermore, Plaintiff's obesity was considered by the DDS-employed physicians. (R. at 127, 134, 140.) Indeed, Dr. Villaflor considered Plaintiff's obesity in making his RFC finding, and the ALJ's conclusion that Plaintiff can do past relevant work is consistent with this finding. Additionally, although the medical records indicate one instance of foot

swelling, in February 1997 (R. at 113), and repeated instances of leg swelling from February to June 1998 (R. at 170-172), the April 1997 consultative exam, completed by Dr. Vashi, notes that Plaintiff denied problems with leg swelling. (R. at 125.) Moreover, at the October 1998 oral hearing, Plaintiff testified that he had only a "little bit" of a problem with leg swelling. (R. at 254-255.) Thus, the ALJ reasonably considered Plaintiff's obesity and leg swelling, but, nonetheless, concluded that, even when considering the combination of Plaintiff's impairments, Plaintiff was not disabled under the Social Security Act. (R. at 16.)

### Conclusion

Having carefully reviewed the entire record upon which the ALJ based his decision, and for the reasons set forth above, the Court concludes that the ALJ's finding, that Plaintiff was not disabled as of or prior to the date of the decision, is supported by substantial evidence. Accordingly,

IT IS HEREBY ORDERED that the Commissioner's Motion for Summary Judgment be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment be, and the same hereby is, DENIED.

Dated: March 12, 2001    E N T E R:

ARLANDER KEYS
United States Magistrate Judge